Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Christopher E. Stiner, SBN 276033
*cstiner@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs*,
ROBERT ALTMANN *et al.,*
and all others similarly situated,

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT ALTMANN, DANIEL AVILES, MELISSA LYNN BREVIG, JEANNINE HALL, MERLYN JOHNSON, ALEXANDRA KELLNER, LATECIA CUSHION KNIGHT, DAVID KREAMER, KYLE KRISTOFF, BRYAN RIVIELLO, ZACHARY SCHWARTZ, OSKAR VILLAGOMEZ and PAMELA VOHRINGER, individually and on behalf of all others similarly situated, | Case No. 5:20-cv-03102 **CLASS ACTION COMPLAINT** |
| Plaintiffs, v. | |
| APPLE INC., a California corporation, | |
| Defendant. | DEMAND FOR JURY TRIAL |

Plaintiffs Robert Altmann, Daniel Aviles, Melissa Lynn Brevig, Jeannine Hall, Merlyn Johnson, Alexandra Kellner, Latecia Cushion Knight, David Kreamer, Kyle Kristoff, Bryan Riviello, Zachary Schwartz, Oskar Villagomez, and Pamela Vohringer (collectively, "Plaintiffs"), acting individually and on behalf of all others similarly situated, bring this action for damages and equitable relief against Defendant Apple Inc. ("Apple"):

## NATURE OF THE CASE

1.      This is a class action brought against Apple on behalf of all consumers who purchased Apple's iPhone XR.

2.      Unbeknownst to consumers, Apple equipped the iPhone XR with a 2x2 MIMO antenna array, an inferior antenna array compared to the 4x4 MIMO array found in Apple's older model phones such as the iPhone XS and the iPhone XS Max.

3.      The 2x2 MIMO antenna array is inferior technology that causes connectivity problems such as slow download speeds and frequent dropped calls.

4.      Apple knew or should have known that it was selling an inferior product, yet Apple failed to disclose the iPhone XR's defect to consumers who reasonably expected the latest Apple product to have the most advanced technology. Apple further warrants that the iPhone XR's technology is free of defects, but the 2x2 MIMO antenna array has a defective connectivity system. Apple continues to profit from the sale of iPhone XRs with inferior technology to consumers who expect the latest and best technology from the latest iPhones.

5.      Plaintiffs bring this action pursuant to Fed. R. Civ. P. ("Rule") 23 for damages and other relief arising from Apple's unfair and deceptive business practices. Apple has violated California consumer protection acts, and Apple has breached its express and implied warranties.

6.      Plaintiffs seek monetary compensation for the defects with the iPhone XR's connectivity and performance.

**PARTIES**

7.     Plaintiff Robert Altmann ("Plaintiff Altmann") is a citizen and resident of Ohio. Plaintiff Altmann owns an iPhone XR that he purchased in June 2019 in Columbus, Ohio. Plaintiff Altmann has been having reception issues since he purchased his phone, including frequent dropped calls, calls cutting in and out, and slow download speeds. Plaintiff Altmann is having worse reception and connectivity than he had with his prior phone, the iPhone X. Also, Plaintiff Altmann's family members, who cohabitate with him and do not use or own the iPhone XR, report that they do not have connectivity issues with their phones.

8.     Plaintiff Daniel Aviles ("Plaintiff Aviles") is a citizen and resident of New York. Plaintiff Aviles owns three (3) iPhone XRs that he purchased in November 2018 in Queens, New York. Plaintiff Aviles has been having reception issues since he purchased his phones, including frequent dropped calls, and calls fading in and out, and problems with slow download speeds.

9.     Plaintiff Melissa Lynn Brevig ("Plaintiff Brevig") is a citizen and resident of Minnesota. Plaintiff Brevig owns four (4) iPhone XRs that she purchased in August 2019 from a US Cellular store in Iowa. Plaintiff Brevig has been having reception issues with all four (4) of her iPhone XRs since she purchased them, including frequent dropped calls, calls cutting in and out, the phone forgetting "known" networks, and slow download speeds.

10.     Plaintiff Jeannine Hall ("Plaintiff Hall") is a citizen and resident of Alabama. Plaintiff Hall owns an iPhone XR that she purchased in March 2019 from AT&T in Sun City, Florida. Plaintiff Hall has been having reception issues since she purchased her phone, including an inability to connect her phone to her data service, requiring her to log off of her WiFi signal and use her data.

11.     Plaintiff Merlyn Johnson ("Plaintiff Johnson") is a citizen and resident of Michigan. Plaintiff Johnson owns two (2) iPhone XRs that he purchased in September 2019 in Michigan. Plaintiff Johnson has been having connectivity issues since he

purchased the two phones, including frequent dropped calls and calls fading in and out, as well as no connection to WiFi.

12.     Plaintiff Alexandra Kellner ("Plaintiff Kellner") is a citizen and resident of Indiana. Plaintiff Kellner owns an iPhone XR that she purchased in November 2019. Plaintiff Kellner has been having connectivity issues since she purchased her phone, including frequent dropped calls, as well as no connection to WiFi.

13.     Plaintiff Latecia Cushion Knight ("Plaintiff Knight") is a citizen and resident of Alabama. Plaintiff Knight owns two (2) iPhone XRs that she purchased in May 2019 in Alabama. Plaintiff Knight has been having connectivity issues since she purchased her phones, including frequent dropped calls and calls coming in and out, as well as forgotten networks, and the spinning wheel characteristic of Apple technology experiencing errors or delay. Plaintiff Knight's daughter also owns an iPhone XR, and she too is experiencing the same connectivity issues.

14.     Plaintiff David Kreamer ("Plaintiff Kreamer") is a citizen and resident of Louisiana. Plaintiff Kreamer owns two (2) iPhone XRs that he purchased in April 2019 through AT&T in Louisiana. Plaintiff Kreamer has been having reception issues since he purchased his phones, including frequent dropped calls, slow download speeds and poor reception on WiFi.

15.     Plaintiff Kyle Kristoff ("Plaintiff Kristoff") is a citizen and resident of California. Plaintiff Kristoff owns an iPhone XR that he purchased in the spring of 2019 from an Apple Store in San Diego, California. Plaintiff Kristoff has been having reception issues since he purchased his phone, including frequent dropped calls, calls fading in and out, the phone forgetting "known" networks, poor reception on WiFi and slow download speeds. Plaintiff Kristoff has taken his iPhone XR to the Apple Store 3-4 times within one year of purchasing his iPhone XR. On one occasion, Apple employees performed a "hard reset" of his iPhone XR. On all other occasions, Apple employees handed Plaintiff Kristoff's iPhone XR back to him after he was told they could not fix it. Despite taking

his iPhone XR to the Apple Store several times to resolve issues with his phone, Apple failed to repair Plaintiff Kristoff's iPhone XR.

16.    Plaintiff Bryan Riviello ("Plaintiff Riviello") is a citizen and resident of Pennsylvania. Plaintiff Riviello owns an iPhone XR that he purchased in October 2018 from an AT&T store in Moosic, Pennsylvania. Plaintiff Riviello has been having reception issues since he purchased his phone, including frequent dropped calls and slow download and browsing speeds. Plaintiff Riviello's home is located in an urban environment where cellular reception is otherwise good, and Plaintiff Riviello's wife, who cohabitates with him, uses an iPhone XS, and she does not experience reception issues at all.

17.    Plaintiff Zachary Schwartz ("Plaintiff Schwartz") is a citizen and resident of California.  Plaintiff Schwartz owns an iPhone XR that he purchased in March 2019 online directly from Apple while he was in San Diego, California.  Plaintiff Schwartz has been having reception issues since he purchased his phone, including dropped calls and slow download speeds. Plaintiff Schwartz's home is located in a dense urban environment where cellular reception is otherwise good, yet Plaintiff Schwartz experiences reception issues with his iPhone XR more days than not.

18.    Plaintiff Oskar Villagomez ("Plaintiff Villagomez") is a citizen and resident of California. Plaintiff Villagomez owns an iPhone XR that he purchased in November 2018 from a T-Mobile store in Alhambra, California. Plaintiff Villagomez has been having reception issues since he purchased his phone, including frequent dropped calls, poor call quality, calls fading in and out, sudden loss of reception, and problems with WiFi connectivity and slow download speeds.

19.    Plaintiff Pamela Vohringer ("Plaintiff Vohringer") is a citizen and resident of New Jersey. Plaintiff Vohringer owns an iPhone XR that she purchased in April 2019 through AT&T in Vineland, New Jersey. Plaintiff Vohringer has been having reception issues since she purchased her phone, including frequent dropped calls and slow download speeds and poor reception on WiFi.

20.     Defendant Apple is an American technology company that designs, develops, and sells electronics, computer software, and online services to consumers, including Plaintiffs and Class members, which include sales of iPhones and interrelated software services.   Apple's principal place of business is located at 1 Infinite Loop, Cupertino, California 95014.   Apple conducts business and operates retail locations throughout the State of California and the United States.

21.     Based on information and belief, Apple's decisions relating to developing, marketing, and implementing the actions complained of herein originated from Apple, Inc. in Cupertino, California, and all plans and decisions that originated at Apple business locations outside of Cupertino required approval from Apple's Cupertino headquarters, thereby providing Apple authority and control over the actions complained about herein.

**JURISDICTION AND VENUE**

22.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).   There are at least 100 members in the proposed classes, the aggregated claims of the individual Class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and at least one Plaintiff is a citizen of a state different from Apple, a California corporation.

23.     This Court may exercise jurisdiction over Apple because Apple's principal place of business is located within this District, and Apple operates retail locations within this District.   Thus, Apple has established sufficient contacts in this District such that personal jurisdiction is appropriate.

24.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.   Specifically, the inferior technology contained in Apple's iPhone XR complained about herein was developed and implemented from Apple's Cupertino, California headquarters within this District.

25.     Assignment is proper to the San Jose Division of this District under Local Rule 3-2(c)-(e), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County, where Apple is headquartered.

## FACTUAL ALLEGATIONS

### iPhone XR's Inferior Technology

26.     The iPhone XR, introduced on September 12, 2018, was manufactured and sold by Defendant alongside the iPhone XS and iPhone XS Max. Pre-orders for the iPhone XR began on October 19, 2018, with an official release on October 26, 2018.[1]

27.     The iPhone XS, the iPhone XS Max and the iPhone XR all use the same modem, the new Intel XMM7560.[2] But the iPhone XR differs from the iPhone XS and iPhone XS Max in a significant way.  The iPhone XR is missing two of the iPhone XS and XS Max's antenna branches, thus giving it a 2x2 MIMO antenna array versus the 4x4 MIMO array contained in the iPhone XS and XS Max. By comparison, all flagship Android phones are 4x4 MIMO. With only 2 prongs on the iPhone XR's array, the 2x2 MIMO has half the pathways of the 4x4 MIMO array.

28.     Independent testing has shown that the differences in performance between 2x2 MIMO and 4x4 MIMO arrays are significant. For instance, PC Magazine reported that "[t]he iPhone XS/Max performed significantly better than the iPhone XR in our tests, and that advantage held for all signal conditions: strong or weak, advanced networks or not."[3] For the best performance with 4x4 MIMO phones, the network also has to support the capability. But PC Magazine's testing results showed that the XS/Max performs significantly better than the XR even when the cellular base station is only running at 2x2 MIMO, demonstrating that the 4x4 MIMO array is a better choice in all circumstances.

---

[1] https://www.macrumors.com/roundup/iphone-xr/ (last accessed May 5, 2020).
[2] https://www.pcmag.com/news/exclusive-iphone-xs-crushes-xr-in-cellular-signal-test-results (last accessed May 5, 2020).
[3] *Id.*

29.    The wireless network testing firm, OpenSignal, confirmed PC Magazine's results. Its testing showed that the iPhone XR's download speed is indeed below even that of prior generations of iPhones[4]:



4G Download Speed by iPhone model in USA

Data collection period: October 26, 2018 – January 24, 2019

**Complaints Regarding the iPhone XR**

30.    Immediately after Apple's release of the iPhone XR, consumers began to notice the connectivity issues and began posting complaints.

31.    For example, on November 20, 2018, a customer identified as "Garrettraible22" posted a complaint about the iPhone XR's connectivity issues on an Apple discussion board[5]:

---

[4] https://www.opensignal.com/2019/02/15/owners-of-the-newest-most-popular-iphone-dont-experience-the-best-speeds (last accessed May 5, 2020).
[5] https://discussions.apple.com/thread/8639867 (last accessed May 5, 2020).

CLASS ACTION COMPLAINT, CASE NO. 5:20-cv-03102



32.    On February 26, 2019, a customer identified as "zsoltvegas" also posted a complaint about the iPhone XR's connectivity issues on the same Apple discussion board here[6]:

33.    The connectivity issues were also reported in the press just days following the release of the iPhone XR. In the same November 5, 2018, PC Magazine article entitled "iPhone XS Crushes XR in Cellular Signal Test Results," cited above, the PC Magazine reviewer commented that "[t]he iPhone XS and XS Max speed past the XR in our most

---

[6] https://discussions.apple.com/thread/250195351 (last accessed May 5, 2020).

recent signal test results, showing that XR downloads may stall while their more expensive siblings zip along in the fast lane."[7]

34.   The poor performance and technical issues that plagued the iPhone XR ultimately had a significant effect on Apple's sales. Apple engaged in price cuts in order to boost sales that was widely criticized as "a deliberate choice to try to sell the XR as a 'cheap' iPhone."[8] Critics saw this as a transparent attempt by Apple to leverage its reputation for producing quality products to sell an inferior product.

35.   Despite reports that Apple might actually correct the antenna issue by installing the far superior 4x4 MIMO antenna array into the iPhone XR, Apple has thus far failed to make that replacement.[9]

36.   As one might expect, Apple engages in rigorous pre-release testing of its products well before their release or pre-order dates. Dozens of engineers oversee pre-production units in the months leading up to a product launch and report feedback to Apple. Given differences in capability between the 2x2 MIMO antenna and the twice-as-capable 4x4 MIMO antenna array Apple's pre-release testing revealed to Apple that the iPhone XR would have serious connectivity shortcomings as compared to other choices in the marketplace. Yet Apple's press release for the iPhone XR said nothing of the inferior antenna array, or the corresponding connectivity issues. Instead Apple suggested that the iPhone XR shared the "breakthrough technology" with that of the iPhone XS.[10]

---

[7] https://www.pcmag.com/news/exclusive-iphone-xs-crushes-xr-in-cellular-signal-test-results
[8] https://www.forbes.com/sites/ewanspence/2018/12/28/apple-news-headlines-iphone-xr-iphone-xs-max-ios-12-5g-problems-mistake/#639990103aff (last accessed May 5, 2020).
[9] https://appleinsider.com/articles/19/01/17/2019-iphone-xr-may-get-same-antenna-tech-thats-in-the-iphone-xs (last accessed May 5, 2020).
[10] https://www.apple.com/newsroom/2018/10/iphone-xr-now-available-around-the-world/ (last accessed May 5, 2020).

37.     Apple's web page for the iPhone XR still omits the connectivity shortcomings of the 2x2 MIMO antenna array, and instead compares the iPhone XR to the iPhone XS and XS Max.[11]

### Apple's Warranty

38.     Included with the original purchase of an iPhone XR, Apple issues a written manufacturer's warranty. This One-Year Limited Warranty states that Apple "warrants the included hardware product and accessories against defects in materials and workmanship for one year from the date of original retail purchase."

39.     Apple knew or should have known of the defects at the time of sale or lease of the iPhone XR. Because the 2x2 MIMO antenna array and the resultant connectivity defects in the iPhone XR are not obvious or ascertainable upon reasonable examination, and the defects were not disclosed to Plaintiffs in any advertising or marketing materials, Plaintiffs were unaware of the defects at the time of purchase.

40.     Apple has failed to remedy the defects or replace the inferior technology in the iPhone XR, and, in many instances Apple has instead merely replaced defective iPhone XR with another defective iPhone XR.

41.     Apple has concealed the fact that Apple equipped the iPhone XR with an inferior 2x2 MIMO antenna array prevents the iPhone XR from performing as reasonably expected, and Apple has failed to disclose to consumers that the replacement iPhone XRs are equally defective.

42.     Plaintiffs and the other Class members reasonably relied on Apple's warranties regarding the quality, durability and other material characteristics of their iPhone XRs, including the representation that the iPhone XRs contained no known defects (defects known to Apple) at the time of sale.

---

[11] *See* https://www.apple.com/iphone/compare/?device1=iphoneXS&device2=iphoneXSmax&device3=iph%20oneXR (last accessed May 5, 2020).

**CALIFORNIA LAW APPLIES NATIONWIDE TO THESE CLAIMS**

43.    By using their iPhone XRs or downloading a software update, Class members are presented with the iOS Software License Agreement, which all provide that California law governs the agreements.

44.    To the extent they apply, the iOS Software Licensing Agreements are effective at the point of sale—as soon as the customers turn on their iPhone XRs—and are thus part of the benefit of the consumers' bargain. Without the iOS, for which there is a purported licensing agreement, the phones simply do not work.

45.    Apple elected to have California law govern all claims and disputes concerning the common software required to operate all of the iPhone XRs at issue in this lawsuit. Accordingly, the application of California law to all of the Class members' claims is fair, appropriate, and an election affirmatively made by Apple consistent in its agreements.

46.    Beyond Apple's election of California law to govern the claims described herein, the State of California has a significant interest in regulating the conduct of businesses operating within its borders. California, which seeks to protect the rights and interests of California and all residents and citizens of the United States against a company headquartered and doing business in California, has a greater interest in the claims of Plaintiffs and Class members than any other state or country and is most intimately concerned with the claims and outcome of this litigation.

47.    The principal place of business of Apple, located at 1 Apple Park Way (formerly 1 Infinite Loop) in Cupertino, California, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its marketing, software development, and major policy, financial, and legal decisions. As admitted by Apple in its Form 10-K for the fiscal period ended September 24, 2016 (the "2016 Form 10-K"), "most of the Company's key personnel" are from Silicon Valley.

48.     Indeed, Apple's iPhone XRs proudly display that they were "Designed by Apple in California."

49.     Apple's response to the allegations herein, and corporate decisions surrounding such response, were made from and in California.

50.     Apple's breaches of duty to Plaintiffs and the Class emanated from California, and the iPhone XRs at issue herein were designed, manufactured, and tested in California.

51.     Application of California law with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because California has a state interest in the claims of the Plaintiffs and the Class based upon Apple's significant and ongoing contacts with California.

52.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to nonresident Plaintiffs and Class members.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

54.     The "Nationwide Class" is defined as follows:

All purchasers or lessees of an iPhone XR.

55.     The "Express Warranty Subclass" is defined as follows:

All members of the Nationwide Class who presented their phone to Apple, an authorized Apple retailer, or an authorized Apple service provider for repair of connectivity issues, whose iPhone XRs were not repaired of the defects, or whose iPhone XRs were replaced with iPhone XRs.

CLASS ACTION COMPLAINT, CASE NO. 5:20-cv-03102

56.     The Nationwide Class and the Express Warranty Subclass are collectively referred to herein as the "Class," and their members as "Class members."

57.     Excluded from the Class are: (1) Apple, any entity or division in which Apple has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

58.     <u>Numerosity</u>: Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court.  The Class members are readily identifiable from information and records in Apple's possession, custody, or control.

59.     <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class members, are or were owners of the iPhone XR.  Plaintiffs, like all Class members, have been damaged by Apple's misconduct in that, *inter alia*, Plaintiffs purchased a defective product with inferior technology.  Furthermore, the factual bases of Apple's misconduct are common to all Class members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class members.

60.     <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class members that predominate over any individual questions.  These common legal and factual issues include the following:

   a. Whether Apple deliberately sold a defective product with inferior technology;

   b. Whether, through its deceptive practices, Apple intended to induce its customers to pay for an inferior product;

c. Whether Apple's iPhone XR contains defects resulting in inferior performance;

d. Whether Apple actively concealed the iPhone XR's defects;

e. Whether Apple actively marketed the iPhone XR as technologically and functionally equivalent to its contemporaries; and

f. Whether Plaintiffs and other Class members have sustained damages as a result of Apple's wrongful business practices described herein, and the proper measure of damages.

61. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

62. <u>Predominance and Superiority</u>: Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Apple's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Apple's misconduct. Absent a class action, Class members will continue to incur damages, and Apple's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION
### Violation of the California Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of Plaintiffs and the Nationwide Class)

63.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

64.     Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class against Apple.

65.     Apple is a "person" as defined by Cal. Civ. Code § 1761(c).

66.     Plaintiffs and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

67.     Plaintiffs' and Class members' iPhone XRs constitute "goods" as defined by Cal. Civ. Code § 1761(a).

68.     Plaintiffs' and Class members' purchases of iPhone XRs constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

69.     Plaintiffs' and Class members' use of their iPhone XRs were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

70.     Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.  (*See* Declaration of Tina Wolfson, attached hereto.)

71.     Apple deceived consumers in that it sold iPhone XRs without disclosing the defect of the inferior 2x2 MIMO antenna array causing connectivity problems to induce consumers to purchase the iPhone XR.  Further, Apple knowingly and intentionally misrepresented and omitted material facts of the iPhone XR deficiency.

72.     Apple's active concealment, failure to disclose, and subsequent misrepresentations violated the California Consumers Legal Remedies Act ("CLRA") in the following manner:

---

15

a.      In violation of Section 1770(a)(5), Apple made misrepresentations and omissions concerning the benefits, performance, and reliability regarding the connectivity of the iPhone XR;

b.      In violation of Section 1770(a)(7), Apple misrepresented that the iPhone XR models were of a particular standard, quality, and/or grade when they were of another (inferior to other iPhones and Android phones contemporaneously released to the market);

c.      In violation of Section 1770(a)(9), Apple advertised its iPhone XR models with an intent not to sell them as advertised (by selling them with inferior technology it knew contained a defect resulting in connectivity issues);

d.      In violation of Section 1770(a)(16), Apple misrepresented that its iPhone XR model was supplied in accordance with previous representations when it was not (by selling them with inferior technology and holding them out as groundbreaking technology when it knew the iPhone XR contained a defect resulting in connectivity issues).

73.     Apple knowingly misrepresented and omitted material facts regarding the iPhone XR's technology that were material to Plaintiffs and Class members because a reasonable person would have considered an inferior antenna array important in deciding whether or not to purchase the iPhone XR.

74.     Plaintiffs and Class members relied upon Apple's material nondisclosures and misrepresentations.  Had Plaintiffs and Class members known the truth about the iPhone XR technology, they would not have purchased their iPhone XRs.

75.     As a direct and proximate result of Apple's material nondisclosures and misrepresentations, Plaintiffs and Class members have been irreparably harmed.

76.     On behalf of the Class, Plaintiffs seek injunctive relief in the form of an order enjoining Apple from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices. Plaintiffs also seek attorneys' fees and costs.

77.     In accordance with Cal. Civ. Code § 1782(a), concurrently with the filing of this complaint, Plaintiffs' counsel served Apple with notice of the CLRA violations by certified mail return receipt requested.

78.     If Apple fails to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiffs' notification letter, Plaintiffs will amend this Complaint to also seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**SECOND CAUSE OF ACTION**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

79.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80.     Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class against Apple.

81.     California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

82.     Apple deliberately sold iPhone XRs that it knew were defective and contained inferior technology.

83.     In failing to disclose its iPhone XR defects, Apple knowingly, intentionally, and/or negligently concealed material facts and breached its duty not to do so.

84.     Apple was under a duty to Plaintiffs and Class members to the defects in the iPhone XR because:

a) Apple was in a superior position to know the true state of facts about the technology contained in the iPhone XR;

b) Apple actively concealed the defect from Plaintiffs and Class members; and

c) Apple made affirmative representations about how the iPhone XR contained the same or superior technology to its contemporaries when in fact Apple knew that the iPhone XR contained inferior technology.

85.    The facts concealed by Apple to Plaintiffs and Class members are material in that reasonable persons would have considered them to be important in deciding whether to purchase an iPhone XR.  Had Plaintiffs and Class members known about the inferior technology in Apple's iPhone XR, they would not have purchased the iPhone XR.

86.    Apple concealed the defect or failed to remedy the defect even after the defect as independently exposed to consumers.  Apple continues to fail to remedy the defect.

87.    Apple has violated and continues to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things, violating the CLRA.

88.    Apple's acts, omissions, and conduct also violate the unfair prong of the UCL because Apple's acts, omissions, and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class members.  The gravity of Apple's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Apple's legitimate business interests, other than Apple's conduct described herein.

89.    By failing to disclose and actively concealing the defect in its iPhone XR, Apple engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

90.    As a direct and proximate result of Apple's unfair and deceptive practices, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

91.    Apple has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to Sections 17203 and 17204 of the UCL.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty – Magnuson-Moss Warranty Act**
**(15 U.S.C. §§ 2301, *et. seq.*)**
**(On Behalf of Plaintiff Kristoff and the Express Warranty Subclass)**

92.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.    Plaintiff Kristoff brings this claim individually and on behalf of the Express Warranty Subclass.

94.    The defective iPhone XRs are consumer products as defined in 15 U.S.C. § 2301(1).

95.    Plaintiff Kristoff and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

96.    Apple is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

97.    Apple provided Plaintiff Kristoff and Subclass members written warranties within the meaning of 15 U.S.C. § 2301(6).

98.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

99.    Apple expressly warranted in its One-Year Limited Warranty associated with the sale of iPhone XRs that it "will either repair, replace, or refund your iPhone at its own discretion. Warranty benefits are in addition to rights provided under local consumer laws."

100.    Upon information and belief, Apple's standard warranty language is identical for all iPhone XRs sold nationwide.

101.    Apple did not provide at the time of sale, and has not provided since then, iPhone XR smartphones conforming to its express warranties.

102.    Apple breached and continues to breach express warranties because at the time of sale, the iPhone XR contained defective technology found in the 2x2 MIMO antenna arrays.

103.   Apple breached and continues to breach express warranties because Apple has not covered and does not cover the full expenses associated with replacing the defective antenna array iPhone XRs.

104.   Plaintiff Kristoff has contacted Apple to repair or replace his iPhone XR under the warranty. Apple either fails to repair the iPhone XR and/or is unable to successfully repair the defects in Plaintiff Kristoff's and Subclass members' iPhone XRs, despite having had reasonable opportunities to do so. Thus, the express warranties fail in their essential purpose.

105.   Apple's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

106.   Apple's iPhone XR's connectivity issues endure despite being repaired or replaced by Apple. As such, the defect is permanent in nature.

107.   Apple fraudulently concealed material information from Plaintiff Kristoff and the Subclass regarding the existence and extent of the defects, and that the replacement iPhone XRs were defective. Thus, any limitations imposed by Apple as to the scope of its obligations under the express warranties to repair or replace iPhone XRs and/or any disclaimers in Apple's written warranties that purported to preclude recovery by Plaintiff Kristoff or Subclass members are both substantively and procedurally unconscionable, and are unenforceable as a matter of law.

108.   Any such limitations or exclusions have been imposed unilaterally by Apple *via* adhesive, "take it or leave it" contracts that do not provide Plaintiff Kristoff or Subclass members any ability to negotiate the substance or coverage of those warranties. Therefore, Plaintiff Kristoff and Subclass members did not have any meaningful choices of reasonably available alternative sources of supply of suitable iPhone XRs free of the above unconscionable conditions.

109.   Apple's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Kristoff and the Subclass members

whole and because Apple has failed and/or refused to adequately provide the promised remedies within a reasonable time.

110.   Apple wrongfully and fraudulently misrepresented and/or concealed material facts regarding the iPhone XR. Plaintiff Kristoff and the Subclass members were therefore induced to purchase the iPhone XR under false and/or fraudulent pretenses.

111.   Under these circumstances, enforcement of any limitations on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner and result in overly harsh or one-sided results that shock the conscience.

112.   Furthermore, many of the damages flowing from the iPhone XR cannot be resolved by limited remedies contained in the express warranties because those damages have already been suffered as a result of Apple's fraudulent conduct and Apple's failure to provide such limited remedies within a reasonable time.

113.   Apple is on notice of the defects in the iPhone XR by numerous customer complaints, letters, emails, and other communications from Subclass members, resellers, technology press, and repair facilities.

114.   Plaintiff Kristoff and the Subclass members have suffered damages directly and proximately caused by Apple's breach of the express warranty and are entitled to recover damages including out of pocket expenses and diminution of value.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty – Magnuson-Moss Warranty Act**
**(15 U.S.C. §§ 2301, *et. seq*.)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

115.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

116.   Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class against Apple.

117.    The iPhone XRs are "consumer products" within the meaning of 15 U.S.C. § 2301.

118.    Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

119.    Apple is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

120.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

121.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

122.    Apple made written and implied warranties regarding the iPhone XR to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301. Apple provided Plaintiffs and other Class members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

123.    Apple breached the implied warranty of merchantability because the iPhone XR was not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the iPhone XR contains defects that render them inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the iPhone XR had they known of the defects.

124.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Apple notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

125.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their iPhone XRs, in an amount to be proven at trial.

126.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

127.   Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Apple's violation of its written and/or implied warranties.

### FIFTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiffs and the Nationwide Class)

128.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

129.   Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class against Apple.

130.   Plaintiffs and Class members entered into contracts with Apple in connection with the sale of Apple's iPhones XR.

131.   Plaintiffs and Class members gave fair and reasonable consideration and performed all their material obligations under the contracts.

132.   Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

133.   Plaintiffs and Class members had a reasonable expectation that, when they purchased their iPhone XRs from Apple, the iPhone XRs would be free of defects and would utilize the best and latest technology available.

134.   Apple used its discretion to place inferior technology into the iPhone XR without informing Plaintiffs and Class members that the inferior technology would create a defect in the iPhone XR's connectivity.

23

135. Plaintiffs and Class members had no reason to know Apple had placed inferior technology into the iPhone XR.

136. By creating and promoting a defective product, Apple breached the covenant of good faith and fair dealing and breached its contractual duty to Plaintiffs and Class members.

137. As a direct and proximate result of Apple's breach, Plaintiffs and Class members suffered damages, including being induced to purchase the defective iPhone XRs.

**SIXTH CAUSE OF ACTION**
**Fraud by Omission**
**(On Behalf of Plaintiffs and the Nationwide Class)**

138. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

139. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class.

140. Apple intentionally concealed that the iPhone XR is defective.

141. Apple further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each iPhone XR and on its website, that the iPhone XRs it was selling had no significant defects, that the iPhone XR was reliable, fast, and would perform and operate in a manner commensurate with other iPhones or Android phones on the market at the time of the iPhone XR release.

142. Apple knew about the defect in the iPhone XR when Apple made these representations.

143. The iPhone XRs purchased by Plaintiffs and the other Class members contained defective and inferior technology.

144. Apple had a duty to disclose a fundamental defect in the iPhone XR.

145.   Apple has held out the iPhone XR to be free from defects, and Apple failed to disclose important facts related to the defect.

146.   Only Apple knew the truth about the defective iPhone XR, and Plaintiffs and the other Class members did not know, nor could they have ascertained, these facts, and Apple actively concealed these facts from Plaintiffs and Class members.

147.   Plaintiffs and the other Class members reasonably relied upon Apple's deceptive omissions.

148.   Apple's omissions were material to consumers because they concerned qualities of the iPhone XR that played a significant role in the value of the iPhone XR and Plaintiffs' and Class members' decision to purchase the iPhone XR.

149.   Apple had a duty to disclose the inferior technology and connectivity defect with respect to the iPhone XR because the facts were known and/or accessible only to Apple, and because Apple knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

150.   Apple had a duty to disclose the defect in the iPhone XR because it made general affirmative representations about the technology and innovations included with its iPhone XR.

151.   Apple's disclosures or non-disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the connectivity capability. Apple's omitted and concealed facts were material because they directly impacted the value of the iPhone XR.

152.   Apple has still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the defect in the iPhone XR.

153.   Apple was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

154.   Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damages because had Plaintiffs and Class members been aware of the

defect in the iPhone XR, Plaintiffs and Class members would have paid less for their iPhone XR or would not have purchased them at all.

155.   The value of Plaintiffs' and Class members' iPhone XR has diminished as a result of Apple's fraudulent concealment.

156.   Accordingly, Apple is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

157.   Apple's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Apple made to them, in order to enrich Apple. Apple's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Cal. Comm. Code § 2314)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

158.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.   Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class.

160.   Apple is and was at all relevant times a merchant with respect to smartphones such as the iPhone XR under Cal. Com. Code § 2104.

161.   Pursuant to Cal. Com. Code § 2314, Apple implied a warranty that the iPhone XRs were in merchantable condition.

162.   Apple marketed the iPhone XRs as reliable, fast, innovative and technologically advanced smartphones that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase the iPhone XR.

163.   Plaintiffs and other Class members purchased the iPhone XR from Apple, or through Apple's authorized agents for retail sales. At all relevant times, Apple was the manufacturer, distributor, warrantor, and/or seller of the iPhone XRs.

164.   Apple knew or had reason to know of the specific use for which Plaintiffs and Class members purchased the iPhone XRs.

165.   Because of the defect in the connectivity system, the iPhone XRs were not in merchantable condition when sold and were not fit for the ordinary purpose of providing reliable voice and data telecommunications.

166.   Apple knew about the defect in its iPhone XR, and Apple had an opportunity to cure its breach of its warranty.

167.   Plaintiffs and Class members have complied with all obligations under the warranty and have afforded Apple a reasonable opportunity to cure the breach of written warranties.

168.   Accordingly, Apple is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

### RELIEF REQUESTED

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against Apple, and accordingly request the following:

A. An order certifying the proposed Class and designating Plaintiffs as the named representatives of the Class and designating the undersigned as Class Counsel;

B. A declaration that Apple is financially responsible for notifying all Class members about their defective iPhone XR;

C. An order enjoining Apple from further deceptive and unfair business practices, particularly the sale of Apple's iPhone XR with an inferior 2x2 MIMO antenna array;

D. An award to Plaintiffs and Class members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

E. A declaration that Apple must disgorge, for the benefit of Plaintiffs and Class members, all or part of the ill-gotten profits it received from its deceptive and unfair business practices, or make full restitution to Plaintiffs and Class members;

F. An award of attorneys' fees and costs pursuant to all applicable laws;

G. An award of pre-judgment and post-judgment interest, as provided by law;

H. Leave to amend the Complaint to conform to the evidence produced at trial; and

I. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury as to all matters so triable.


Dated: May 5, 2020

Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Christopher E. Stiner, SBN 276033
*cstiner@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs,*
ROBERT ALTMANN *et al.,*
and all others similarly situated

CLASS ACTION COMPLAINT, CASE NO. 5:20-cv-03102

## <u>DECLARATION OF TINA WOLFSON</u>

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs in the above-captioned action.  I am admitted to practice law in California and before this Court and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Venue is proper in this Court because Plaintiffs suffered injuries as a result of Apple's acts in this District, including Apple's decision to sell inferior technology in this District.  Apple regularly operates retail locations in this District and is registered to do business in California.

3.      Plaintiff Robert Altmann ("Plaintiff Altmann") is a citizen and resident of Ohio.

4.      Plaintiff Daniel Aviles ("Plaintiff Aviles") is a citizen and resident of New York.

5.      Plaintiff Melissa Lynn Brevig ("Plaintiff Brevig") is a citizen and resident of Minnesota.

6.      Plaintiff Jeannine Hall ("Plaintiff Hall") is a citizen and resident of Alabama.

7.      Plaintiff Merlyn Johnson ("Plaintiff Johnson") is a citizen and resident of Michigan.

8.      Plaintiff Alexandra Kellner ("Plaintiff Kellner") is a citizen and resident of Indiana.

9.      Plaintiff Latecia Cushion Knight ("Plaintiff Knight") is a citizen and resident of Alabama.

10.     Plaintiff David Kreamer ('Plaintiff Kreamer") is a citizen and resident and resident of Louisiana.

11.    Plaintiff Kyle Kristoff ("Plaintiff Kristoff") is a citizen and resident of California.

12.    Plaintiff Bryan Riviello ("Plaintiff Riviello") is a citizen and resident of Pennsylvania.

13.    Plaintiff Zachary Schwartz ("Plaintiff Schwartz") is a citizen and resident of California.

14.    Plaintiff Oskar Villagomez ("Plaintiff Villagomez") is a citizen and resident of California.

15.    Plaintiff Pamela Vohringer ("Plaintiff Vohringer") is a citizen and resident of New Jersey.

16.    Defendant Apple Inc. is a California corporation registered to do business in California with its principal place of business located at One Apple Park Way, Cupertino, California 95014.

I declare under penalty of perjury under the laws of the United States and the State of California this 5th day of May, 2020 in Los Angeles, California that the foregoing is true and correct.

Tina Wolfson